HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROY J. LEFEVRE and ROSALIND T. LEFERVE, husband and wife; and LAURIE J. V. OLSON, Personal Representative of the Estate of JAMES L OLSON, and Individually as the surviving spouse of JAMES OLSON,<br><br>Plaintiffs,<br><br>v.<br><br>CBS CORPORATION, et al.,<br><br>Defendants. | CASE NO. C13-5058 RBL<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT<br><br>(Dkt. #124, 131) |

## I.  INTRODUCTION

THIS MATTER is before the court on cross motions for summary judgment by Plaintiffs (Dkt. #124) and Defendant Crown Cork & Seal Company, Inc. (Dkt. #131). Plaintiffs ask this Court to determine as a matter of law that Crown Cork is the corporate successor to the Mundet Cork Corporation and therefore responsible for product claims arising out of asbestos-containing insulation products that Mundet manufactured through the early 1960s. Crown Cork argues that it is not liable as a successor and asks the Court to dismiss Plaintiffs' product liability claims against it. For the following reasons, Plaintiffs' motion for partial summary judgment on the

issue of successor liability is **GRANTED**, and Defendant's motion for summary judgment is **DENIED**.

## II.     BACKGROUND

Mundet began manufacturing and installing asbestos and cork insulation throughout the United States, including on navy ships, in 1893.  Plaintiffs Roy LeFevre and James Olson both worked on naval vessels that contained asbestos laden insulation manufactured and installed by Mundet.  Mr. LeFevre and Mr. Olson have been diagnosed with asbestos-induced malignant mesothelioma and they allege that they got the disease through their exposure to asbestos-laden insulation.  Crown Cork is the corporate successor to Mundet, although it has never itself manufactured or sold any asbestos-containing insulation products.  Plaintiffs sued a number of asbestos-producing defendants, including Crown Cork, to recover damages resulting from their asbestos exposure. Mr. Olson has since passed away.

The current motions turn on whether Crown Cork has successor liability for Mundet's asbestos-related products.  Three transactions are pertinent to this discussion.  First, on November 7, 1963, Crown Cork agreed to purchase 70 percent of Mundet's outstanding capital stock, and to purchase the remainder of Mundet's outstanding stock within 30 days of closing.  At the time of the stock purchase, Mundet's business included two relevant divisions: the bottle cap division and the insulation division.  Before the purchase, however, Mundet had already stopped manufacturing insulation.  Crown Cork's interest in purchasing Mundet was to acquire the bottle cap division.

On February 8, 1964, Crown Cork sold Mundet's insulation division to Baldwin Ehret Hill (BEH).  This sale included the transfer of all insulation-related contracts, raw materials, equipment, books and records, trade names and trademarks, and offices from Mundet to BEH.  A

Bill of Sale and Assignment memorialized this sale, and under the agreement BEH expressly agreed to "assume all liabilities and obligations of the Seller arising from and after February 8, 1964 under the Lease, Contract and Performance Bonds." (Dkt. # 124, Exhibit 8, "Bill of Sale and Assignment.") The agreement did not address liabilities arising prior to February 8, 1964.

Two years later, on January 4, 1966, Mundet formally merged into Crown Cork. Following the merger, Mundet ceased to exist as either a division of Crown Cork or as a separate corporate entity, and Crown Cork became the sole surviving entity.

The parties agree that Crown Cork inherited Mundet's liabilities as they existed at the time of the 1966 merger. The parties do not agree, however, as to whether the liabilities transferred to Crown Cork in 1966 included Mundet's pre-February 8, 1964 asbestos-related liabilities. Crown Cork argues that Mundet's pre-February 8, 1964 asbestos-related liabilities were assumed by BEH when BEH purchased Mundet's insulation division. Plaintiffs argue that Mundet retained the pre-February 8, 1964 liabilities after the sale to BEH, and that *all* Mundet asbestos-related liabilities were assumed by Crown Cork through the 1966 merger.

To determine whether Crown Cork is responsible for Mundet's pre-February 8, 1964 asbestos-related liabilities under a successor liability theory, the Court must first determine whether the liabilities were transferred to BEH through the 1964 sale of the insulation division. If BEH assumed Mundet's asbestos-related liabilities, then Crown Cork will not be liable. If BEH did not assume the liabilities, then Crown Cork will have assumed them through the 1966 merger. The parties agree that Washington state substantive law applies.[1]

---

[1] Additionally, Crown Cork has challenged a number of Plaintiffs' exhibits, and it has incorporated a request to strike Plaintiffs' motion for partial summary judgment on evidentiary grounds. The Court rules that the evidence is properly admitted, and thus **DENIES** the motion to strike.

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### B.   Successor Liability

"A corporation purchasing the assets of another corporation does not, by reason of the purchase of assets, become liable for the debts and liabilities of the selling corporation." *Martin v. Abbott Laboratories*, 102 Wash.2d 581, 609 (1984). This traditional corporate law doctrine is based on the idea that "a sale of corporate assets transfers an interest separable from the corporate entity and does not result in a transfer of unbargained-for liabilities from the seller to the purchaser." *Hall v. Armstrong Cork, Inc.*, 104 Wash.2d 258, 262 (1984). Courts have

recognized, however, that the traditional rule allows a transferring corporation, under certain circumstances, to effectively avoid its obligations to the detriment of creditors and minority shareholders. *Abbott Labs*, 102 Wash.2d at 609. To avoid this result, courts have developed four exceptions to the general rule that liabilities are not transferred:

> (1) the purchaser expressly or impliedly agrees to assume liability;
> (2) the purchase is a *de facto* merger or consolidation;
> (3) the purchaser is a mere continuation of the seller; or
> (4) the transfer of assets is for the fraudulent purpose of escaping liability.

*Hall*, 103 Wash.2d at 262 (1984) (citing *Abbott Labs*, 102 Wash.2d at 609). If any of these four circumstances are present, the acquiring entity is a successor to the liabilities and obligations of the selling corporation. *Abbott Labs*, 102 Wash.2d at 609.

In *Abbott Labs*, the Washington Supreme Court recognized that this traditional rule of non-liability and the four established exceptions to it fail to prevent inequitable results in the products liability context: "while the four common law exceptions protect commercial creditors, they frequently leave the products liability plaintiff without a remedy." *Id.* at 610 (internal citations omitted). The court thus adopted an additional exception to the rule of non-liability— the "product line" exception—in order specifically to protect products liability plaintiffs. *Id.* Under this exception, a transferee will assume the liabilities of the transferor if it:

> (1) has acquired substantially all the transferor's assets, leaving no more than a mere corporate shell;
> (2) is holding itself out to the general public as a continuation of the transferor by producing the same product line under a similar name; and
> (3) is benefitting from the goodwill of the transferor.

*Hall*, 103 Wash.2d at 262-263 (citing *Abbott Labs.*, at 615). The rationale behind the product line exception is one of public policy:

> [A]n essential purpose of the product line exception is to afford a products liability claimant an opportunity to bring an action against the successor corporation when his or her rights against the predecessor corporation have been

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT - 5

essentially extinguished either *de jure*, through dissolution of the predecessor, or *de facto*, through sale of all or substantially all of the assets of the predecessor.

*Hall*, 103 Wash.2d at 264.  In creating this exception, the Washington Supreme Court explicitly noted that the policy justifications for this exception "require the transfer of substantially all of the predecessor's assets to the successor corporation as a prerequisite to imposing liability on the successor." *Id*.  In short, the rule balances the need for a products liability plaintiff to have a meaningful remedy with the need for fairness—i.e., that there be a causal connection between the successor's acquisition and the unavailability of the predecessor. *Id.*  The Court's task, then, is to determine whether BEH's acquisition of Mundet's insulation division implicates the product line exception to the general rule of non-liability.

> **i.    BEH did not acquire Mundet Cork's product liabilities via the product line exception**

Crown Cork argues that BEH acquired Mundet's product liability when it purchased the insulation division.  It argues that the insulation division constituted an entire product line, because BEH agreed to purchase all of Mundet's insulation related equipment, materials, contracts, and so forth.  Crown Cork argues that the product line exception is implicated and Mundet's insulation related liabilities reside with BEH and its line of successors.

The first factor of the product line exception contemplates whether the transfer included substantially all of the transferor's assets, and courts have held that the exception does not apply when the transferor continues to exist as a going concern following the sale of a product line. *Hall*, 103 Wash.2d 258; *LaFountain v. Webb Industries Corp.*, 951 F.2d 544, 548 (3d. Cir 1991). In *Hall*, the court held that the product line exception did not apply when UNARCO Industries, Inc., continued to exist following the sale of its Unibestos pipe insulation product line to Pittsburgh Corning Corporation. *Id.*  Many years after the sale, multiple plaintiffs sued

Pittsburgh Corning under a successor liability theory for asbestos-related damages from the Unibestos insulation. The court did not apply the product line exception to find Pittsburgh Corning liable because UNARCO continued to manufacture and sell products following the Unibestos sale. *Id.* at 267. In doing so, the court noted that the policy rationales for the product-line exception were not implicated:

> The product line rule strikes a balance between the necessity of compensating the injured plaintiff and the fairness of requiring [a causal connection between the successor's acquisition and the unavailability of the predecessor.] When, as here, there has been no complete transfer of assets, the element of necessity is not present as the plaintiff may look to the original manufacturer.

*Id.* at 264. The court was clear in the limits of the product line exception: "[w]e can discern no valid reason for extending the product line exception when the predecessor has not been extinguished, in law or fact, by succession or dissolution." *Id.* at 267.

This case is directly analogous: Mundet continued to exist as a going concern following the sale of the insulation division to BEH. Following the sale, Mundet was far more than a mere corporate shell. It did not dissolve following the sale, nor did the sale constitute substantially all of Mundet's assets. As in *Hall*, the policy rationales for the product line exception do not apply: Mundet continued to provide a remedy to plaintiffs injured by its asbestos-containing insulation through its continued existence as a corporate entity. Thus, the Court holds that the product line exception is not applicable to the sale of Mundet's insulation division to BEH.[2]

Without the product-line exception—and the parties do not contend that any other exception applies to the sale to BEH—Mundet's asbestos-related liabilities would have been transferred to BEH only through an express assumption of those liabilities by BEH. But no such assumption took place. The Bill of Sale is explicit: BEH only agreed to "assume all liabilities

---

[2] Because the first factor of the product line exception is not met, the Court need not determine whether the second and third elements are met.

and obligations of the Seller arising from and *after* February 8, 1964 under the Leases, Contract and Performance Bonds." (Dkt. #124, Exhibit 8, "Bill of Sale and Assignment.")  Thus, it is clear that BEH is not the successor of Mundet's pre-February 8, 1964 liabilities.

      ii.      **Crown Cork acquired Mundet's pre-February 8, 1964 asbestos-related liabilities through the 1966 merger**

Because BEH did not assume Mundet's pre-February 8, 1964 liabilities, such liabilities necessarily remained with Mundet after the sale of the insulation division.  Nothing in the record indicates any other transaction between 1964 and 1966 that would have transferred Mundet's liabilities to a third party.  Therefore, Mundet's asbestos-related liabilities transferred to Crown Cork through the 1966 merger, and Crown Cork is responsible for such liabilities as a matter of law.

      iii.      **The Court's conclusion here is bolstered by Crown Cork's other asbestos-related litigation**

This determination is bolstered by other asbestos-related litigation involving Crown Cork.  This is far from the first time Crown Cork has found itself embroiled in asbestos-related litigation stemming from its merger with Mundet.  Recently, the King County Superior Court ruled against Crown Cork on this same issue of successor liability: "Mundet's pre-February 8, 1964 liabilities do not accede to BEH under the product line exception because Mundet Cork Corp. remained a going concern after the sale of its thermal insulation contracting division." *Langdon v. CBS Corporation, et al.*, King County Cause No. 12-2-30460-2 (Aug. 2, 2013). Additionally, in various asbestos related cases throughout the country, it appears that the parties assumed—without any challenge from Crown Cork—that Crown Cork is the successor to Mundet's asbestos related liabilities.  *See, e.g., Johnson v. Am. Std.*, 607 Pa. 492, 521 (2010); *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 129 (Tex. 2010); *Saller v. Crown Cork &*

*Seal Co., Inc.*, 187 Cal. App. 4th 1220, 1226-1227 (2010). In short, the Court's conclusion that Crown Cork is responsible for Mundet's pre-February 8, 1964 asbestos-related liabilities is not a novel conclusion.

### IV. CONCLUSION

Plaintiffs' motion for partial summary judgment is **GRANTED**. Defendant Crown Cork's motion for summary judgment is **DENIED**.

IT IS SO ORDERED.

Dated this 9th day of September, 2013.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE