HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

1

2

3

4   ROY J. LeFEVRE and ROSALIND T.
    LeFEVRE, husband and wife; and
5   SHARLEEN SPRAGUE, Personal
    Representative of the Estate of JAMES
6   OLSON, and LAURIE V. OLSON,
    Individually and as the surviving spouse of
7   JAMES OLSON,

8                           Plaintiffs,

9   v.

10  CBS CORPORATION, et al.,

11                          Defendants.

No: 3:13-cv-05058

**DEFENDANT OWENS-ILLINOIS, INC.'S
MOTIONS *IN LIMINE* NOS. 1 - 15**

NOTED FOR CONSIDERATION
DECEMBER 27, 2013

ORAL ARGUMENT REQUESTED

---

## OWENS-ILLINOIS, INC.'S MOTIONS *IN LIMINE* NOS. 1 - 15

Owens-Illinois, Inc. ("OI") respectfully submits these Motions *in Limine* Nos. 1 through 15 pursuant to Local Civil Rule 7(d)(4) and the Order of May 6, 2013.

### 1.    Preclude References to OI as an "Asbestos Company" or Member of an "Asbestos Industry"

OI moves for an order precluding Plaintiffs from referring to OI as an "asbestos company" or a member of an "asbestos industry," or any other similar designations. Plaintiffs should be precluded from using this tactic, as any reference to an "asbestos industry" is irrelevant to the issues in this case and unfairly prejudicial to OI. References to the "asbestos industry" also should be excluded because they suggest to the jury that it should not look at the evidence with respect to each Defendant or its products individually, but instead hold the Defendants collectively liable for being part of an industry that, as a general matter, manufactured and sold asbestos-containing products. Because these references would unduly prejudice OI, and confuse and mislead the jury, OI requests an order precluding Plaintiffs from making reference to OI as an "asbestos company" or the "asbestos industry." Fed. R. Evid. 402, 403;  *Boyd v. City & County of San Francisco*, 576 F.3d 938, 947 (9th Cir. 2009).

Schiff Hardin LLP
Attorneys At Law
San Francisco

1        **2.        Exclude Testimony, Argument, Comments, or Assertions About
                Asbestos-Related Illnesses and Deaths of Non-Parties.**

2        OI moves for an order precluding Plaintiffs from offering testimony or other evidence, or

3    from arguing to the jury, that (1) OI has been sued by other individuals, not party to this litigation,

4    claiming that they have been injured as a result of their alleged exposure to OI Kaylo, and (2)

5    other individuals who worked at PSNS were subsequently diagnosed with asbestos-related

6    diseases in an effort to prove a causal link between these Plaintiffs' work at PSNS and their

7    respective illnesses.

8        OI anticipates that Plaintiffs may intend to introduce evidence regarding other personal

9    injury actions previously asserted against OI. Such evidence is irrelevant and should be excluded.

10   Additionally, any probative value pertaining to such evidence is substantially outweighed by the

11   likelihood that its admission would be unfairly prejudicial, would confuse the issues, and would

12   cause undue delay. The fact that other plaintiffs have asserted causes of action against OI does not

13   make any fact of consequence in this case more or less probable than it would be without the

14   evidence. Fed. R. Evid. 401. Each asbestos personal injury action is unique. The types of

15   exposure alleged by each plaintiff, the identification of the products at issue, the time periods

16   involved in each alleged exposure, and the nature and circumstances of each alleged exposure

17   vary from case-to-case. Moreover, parading before the jury a litany of other cases in which

18   exposure to OI Kaylo was alleged to have caused or contributed to the death or injury of non-

19   parties would be severely prejudicial to OI in this case. In light of the inability of such evidence to

20   serve *any* valid evidentiary purpose, such evidence is rightly excluded under Fed. R. Evid. 403.

21   *Warrilow v. Qualcomm, Inc.*, 268 Fed. Appx. 561, 563 (9th Cir. 2008) (district court correctly

22   excluded testimony of prior employees who also claimed to have experienced age discrimination

23   and correctly determined that allegations would unfairly prejudice defendant and would distract

24   jury from the real issues at trial).

25       Plaintiffs should also be precluded from offering evidence or argument about the

26   development of asbestos-related disease in other individuals who worked at PSNS as a means to

Schiff Hardin LLP
Attorneys At Law
San Francisco

meet their burden of establishing causation in this case. Plaintiffs bear the burden in this case of establishing that Mr. Olson and Mr. LeFevre were exposed to asbestos from OI Kaylo and that such exposures were significant enough to be considered a "substantial factor" in the development of their injuries. *Morgan v. Aurora Pump Co.*, 159 Wash. App. 724, 739 (2011); *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005). OI anticipates that Plaintiffs may seek to introduce evidence of asbestos-related disease in *other* individuals in an attempt to meet their burden of establishing proximate causation with respect to Mr. Olson and Mr. LeFevre. Such evidence or argument is irrelevant, unduly prejudicial and should be excluded.

Whether or not other individuals, who may for some unknown period of time have worked or been present at PSNS, subsequently developed an asbestos-related illness says nothing about whether Mr. Olson or Mr. LeFevre were exposed to OI Kaylo or whether such exposures were a substantial factor in their development of mesothelioma. Indeed, such evidence says nothing at all about whether those other individuals themselves experienced any exposure at PSNS, let alone to OI Kaylo. Admitting such evidence to establish causation in this case would require a series of mini-trials regarding the host of individualized issues specific to each non-party: the source of their alleged exposure, the products to which they alleged exposure, the locations other than PSNS where they worked and the types of exposures they had at those locations, the circumstances and time periods of their alleged exposures and, finally, the reliability of their alleged diagnoses. The potential for prejudice, confusion and undue waste of time that would result from the introduction of such evidence is manifest. *Willis v. BNSF Railway Company*, 2013 WL 5491951 at 7-8 (C.D. Ill. Oct. 2, 2013) (excluding evidence of other workers' injuries as failure to do so would require "a conglomeration of mini-trials"). Moreover, the inference that Plaintiffs would be surreptitiously asking the jury to draw—that OI has harmed hundreds or thousands of former PSNS workers—is impermissible and would be extremely prejudicial to Owens-Illinois. *Marsee v. United States Tobacco Co.*, 866 F.2d 319, 321-22 (10th Cir. 1989) (absent evidence that snuff caused oral cancer of another user of defendant's snuff, evidence

should be excluded because the inference is conjectural); Fed. R. Evid. 403; *Wiggan*, 700 F.3d at 1213.

### 3.     Exclude Testimony, Argument, Comments or Assertions Referring to Plaintiffs or Others as a "Victim" or "Asbestos Victim."

OI moves for an order barring references to Plaintiffs as "victims" or "asbestos victims." Such characterizations are unduly prejudicial. Fed. R. Evid. 403; *Jackson v. State*, 600 A.2d 21, 25 (Del. Supreme Court 1991) (it is incompatible with the presumption of innocence for the prosecutor to refer to the complaining witness as the "victim," just as it is to refer to the defendant as a "criminal"). Besides arousing sympathy for Plaintiffs, "victim" is meant to imply that OI is the "perpetrator" of a crime. Such inflammatory and unfairly prejudicial characterizations should be excluded.

### 4.     Exclude Specific Expert Testimony of Barry Castleman.

OI moves to exclude Barry Castleman ("Castleman"), one of Plaintiffs' disclosed experts, from testifying in this case or alternatively from offering his interpretations of medical and historical literature, under Fed. R. Evid. 702 and *Daubert*. If necessary, OI further requests a *Daubert* hearing to determine the admissibility of Castleman's testimony.

Castleman is a creature of this litigation. He is not a medical doctor, an industrial hygienist, or a historian. Since he was a graduate student, he has been a paid "researcher" for the asbestos plaintiffs' bar. He prepared his first self-copyrighted article on "The Development of Knowledge About Asbestos Disease" in 1977 at the request of an asbestos plaintiffs' lawyer, something "which he could use to present the evidence in court." Barry Castleman Dep., *Neal v. Fibreboard Corporation*, Civil Action TY-79-11-CA, Tyler Div., USDC, E.D. Texas August 13, 1982 at p. 26-27 (attached as Ex. D). He later used that "research" to provide the basis for his doctoral thesis and his book, *Asbestos: Medical and Legal Aspects*. The dust jacket informs the reader exactly why the book was written:

Schiff Hardin LLP
Attorneys At Law
San Francisco



Barry Castleman, *Asbestos: Medical and Legal Aspects* (1st ed. 1984). Inside, he dutifully acknowledged the asbestos plaintiffs' lawyers "who gave generously of their time to assist in the compilation of material and review its presentation." He omitted to mention, however, that he had been on their payroll for many years.

Castleman will employ no principles or methods that professionals in any recognized scientific field apply to their work. Trained as a chemical engineer, he simply has no field of expertise relevant to this case. Castleman's testimony has therefore regularly been excluded when challenged under Rule 702 and *Daubert*. *Rutkowski v. Occidental Chem. Corp.*, No. 83 C 2339, 1989 WL 32030, at *1 (N.D. Ill. Feb. 16, 1989); *Flood v. Owens-Illinois, Inc.*, No. 86 C 8947, Hr'g Tr. at 13:25-14:1, 13:25-14:1 (N.D. Ill. Mar. 15, 2004) (attached as Ex. A); *Deyerler v. Georgia-Pacific, LLC*, No. 08 C 5362, Tr. at 77:15-125:2 (N.D. Ill. Sept. 30, 2008) (attached as Ex. B); *In re Related Asbestos Cases*, 543 F. Supp. 1142, 1149-50 (N.D. Cal. 1982).

Courts consistently view Castleman's purported "expert" testimony with great skepticism, characterizing Castleman as a "librarian of asbestos research" who "lacks the medical background and experience to evaluate and analyze the articles in order to identify which parts of the articles best summarize the author's conclusions." *Rutkowski v. Occidental Chem. Corp.*, No. 83 C 2339, 1989 WL 32030, at *1 (N.D. Ill. Feb. 16, 1989); *see also Flood*, Hr'g Tr. at 13:25-14:1

Schiff Hardin LLP
Attorneys At Law
San Francisco

(excluding Castleman under Daubert and finding him "not qualified medically to render a scientific or medical opinion," further noting that "there is no standard to demonstrate that [his opinion] is anything other than purely subjective.") (Ex. A); *Deyerler*, Tr. at 77:15-125:2 (Ex. B) (Court noting that it was "at a loss to understand . . . what [Castleman] would be testifying to in terms of fact."). Courts of appeal have warned their trial courts about improperly allowing Castleman's speculative opinions. *In re Guam Asbestos Litig.*, 61 F.3d 910, 1995 WL 411876, at *1; *see also McClure v. Owens Corning Fiberglas Corp.*, 298 Ill. App. 3d 591, 602 (Ill. App. Ct. 1998) ("We question whether Castleman's testimony was beyond the experience and knowledge of the jury."), *overruled on other grounds*, 188 Ill. 2d 102 (1999). As Judge Kozinski accurately stated in a 1995 opinion:

> [Castleman] was not qualified to testify as an expert on the medical state of the art or anything else; he appears to have read a number of articles for the sole purpose of turning himself into an expert witness. *Reductio ad absurdum.*

 *In re Guam Asbestos Litig.*, 61 F.3d 910, 1995 WL 411876, at *1 (9th Cir. 1995) (Kozinski, J., dissenting).

In fact, courts within this Circuit have declined to qualify Castleman as an expert, noting that his proffered testimony would not assist the jury to understand the available medical literature, and holding that Castleman was not qualified to testify as to "how the articles were received by the medical community when they were first published." *In re Related Asbestos Cases*, 543 F. Supp. at 1149 (noting that Castleman did not "possess the expertise necessary to read complex, technical medical articles and discern which portions of the articles would best summarize the authors' conclusions.") That is hardly surprising given Castleman's own admission in the 1980s:

> Q.   [I]n the *Neal* case when you were asked if in your testimony you thought you could give opinions, did you say, "I think that it really doesn't aid the jury a great deal to know what I think about all this stuff.  I think that it is, and of course this opinion may or may not be shared by other parties involved in these actions, but I think that the documentation, if it can be presented in a reasonably complete way, speaks well enough for itself that a

jury should be able to understand it and evaluate it"?

A.     I still think that's true.

Castleman Test., *Jenkins v. Raymark*, Civil Action M 84193, Marshall Div., USDC, E.D. Texas March 11, 1986 at p. 1900 (attached as Ex. C); *see also* Barry Castleman test. 76:8-18 .(Ex. D) ("I could make factual statements that go to the question of accessibility of the information. But I don't think that it would be useful to go beyond that into the realm of opinion.").

Castleman now apparently seeks to repudiate those admissions, for his report in this case is rife with his opinions about what the defendants purportedly knew or should have known many decades ago based on the inferences that should have been drawn from medical and scientific studies, virtually none of which examined the asbestos-related health risks associated with the circumstances of asbestos exposure alleged in these cases (bystander and derivative household exposures). Like the courts cited above, the Court should preclude that.

Castleman's opinions are more political than scientific. In the section of his book entitled, "Criminal Sanctions and Personal Responsibility" he states, "The members of this privileged class [the defendants] decide what will be manufactured, where and how it will be made and sold. The asbestos epidemic, whose toll of preventable deaths in the U.S. alone will at least be in the hundreds of thousands, offers opportunity to see how the criminal law or lack of it relates to public health," *Asbestos: Medical and Legal Aspects* 769 (5th ed. 2005). In testifying before Congress, Castleman has twice advocated in favor of criminal liability for sellers of asbestos-containing products:

> I think there should be personal, criminal liability for selling [asbestos-containing products] without warnings to consumers . . . .
> The history of asbestos product marketing is unfortunately replete with stories of what many people might regard as toxic corporate crime.

Barry Castleman Cong. Test. (Ex. E) at 83, July 31, 2001.

> . . . .
>
> The asbestos industry is a quasi-criminal industry in much of the world today, using its power to corrupt political processes and

Schiff Hardin LLP
Attorneys At Law
San Francisco

control the media when challenged.

Barry Castleman Cong. Test. (Ex. F) at 13, Mar. 1, 2007.

Castleman is not a historian, nor does he apply the well-established principles of the historical method. He selects the material that he is willing to consider based on his pre-determined opinions. He refuses to look for, or even read, information that may be contrary to his opinions. Castleman Dep. *Shipley v. Pneumo Abex Corp.*, at 32:25-36:25, Sept. 28, 2010 (attached as Ex. G); *see also* Castleman Dep., *Jacques v. Keene Corp.*, at 50:7-14, Jan. 3, 2002 (admitting that he has "done [nothing] independently to go out and search for information that would add to [his] body of knowledge about Owens-Illinois's perspective when it manufactured and sold Kaylo.") (attached as Ex. H). He excuses his failure to look for relevant information that may be contrary to his opinion by rationalizing that "the stuff, if it was significant, would have come to my attention and hasn't." Castleman Dep. (Ex. H) at 44:11-45:1, Jan. 3, 2002.

Castleman's view that he has no obligation to validate his opinions is blatantly unscientific. Indeed, the unwillingness to consider all data – including that which may contradict his hypothesis – is the antithesis of good science. *Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502-03 (9th Cir. 1994); *In re Bextra and Celebrex Marketing Sales Practices and Prod. Liab. Litig.*, 524 F. Supp. 2d 116, 1177 (N.D. Cal. 2007).

As explained below, Castleman should be excluded from testifying in this case because his opinions fail each of the *Daubert* and Rule 702 standards: (1) he is not qualified by any knowledge, skill, or experience to opine about what corporations knew, when they knew it, or the significance of any such knowledge; (2) his opinions are not the product of any reliable principles and methods; and (3) even if they were, they are not relevant to understand the evidence or to determine a factual issue.

## LEGAL STANDARD

The admissibility of expert evidence is governed by Federal Rule of Evidence 702 and the Supreme Court's seminal decision in *Daubert*, 509 U.S. 579 (1993). By its terms, Rule 702

allows testimony only by an "expert," someone with the requisite "knowledge, skill, experience, training, or education," where (a) the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Daubert therefore requires the district court to act as the evidentiary gatekeeper, ensuring that Rule 702's requirements are satisfied before allowing the jury to hear a proffered expert. 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). District courts have broad discretion in deciding the admissibility of expert evidence. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Henricksen v. ConocoPhillips*, 605 F. Supp. 2d 1142, 1153 (E.D. Wa. 2009). It is clear, however, that while a district court has wide latitude to decide how to measure reliability, it must still do so. *Henricksen*, 605 F. Supp. 2d at 1153-54.

Before admitting expert evidence, a district court employs a three-part analysis: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *Papadopoulos v. Fred Meyer Stores, Inc.*, No. 04-0102RSL, 2006 WL 1375074, * 2 (W.D. Wash. May 17, 2006). The purpose of the *Daubert* inquiry is to scrutinize the proposed expert witness testimony to determine if it has "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002) (quoting *Kumho Tire Co.*, 526 U.S. at 152). The proponent of the expert bears the burden of showing that the expert's evidence would satisfy the *Daubert* standard by a preponderance of the evidence. *Henricksen*, 605 F. Supp. 2d at 1154.

### A.  Castleman Is Not Qualified to Offer His Opinions.

Castleman's degrees do not, and cannot, qualify him to testify on subjects as to which he

has no relevant expertise. He holds no specialized knowledge in the fields of history, medicine, law, industrial hygiene or corporate conduct. His opinions are therefore unrelated to his expertise and should be excluded. *In re Related Asbestos Cases*, 543 F. Supp. at 1149-50 (declining to qualify Castleman as an expert). As the judges around the country have held, Castleman lacks any qualification to offer medical opinions or make medically-qualitative decisions. *In re Related Asbestos Cases*, 543 F. Supp. at 1149-50; *In re Guam Asbestos Litig.*, 1995 WL 411876, at *1; *Rutkowski*, 1989 WL 32030, at *1; *Deyerler* (Ex. B) at 122:10-124:6 (holding that Castleman was not qualified to interpret evidence for the jury or "otherwise do anything.").

Historians follow reliable principles and methods to review historical materials. *E.g.*, G. Reiner, *History: Its Purpose and Method* (1950); R. Shafer, *A Guide to Historical Method* (1974). They prioritize source materials, search for corroborating evidence and contrary evidence, provide historical context, and test the product of their research. Castleman is not a historian of any type and is not qualified to apply, and does not apply, a historian's methodology. He is proud of his refusal to consider contrary evidence, demonstrating his position as an advocate rather than an expert. Castleman Dep. (Ex. G) at 32:25-36:25, Sept. 28, 2010.  Castleman is "unable to describe the reaction of the medical community to the articles at the time they were first published." *In re Related Asbestos Cases*, 543 F. Supp. at 1149. To the extent Castleman's expertise is reading medical journals, that is no expertise at all. *In re Guam Asbestos Litig.*, 1995 WL 411876, at *1. He is just a "librarian of asbestos research." *Rutkowski*, 1989 WL 32030 at *1.

An expert witness with the appropriate business expertise could perhaps testify about how businesses become aware of and react to developments in their field. Castleman has no degree or training in business, much less corporate responsibility. His science degrees are completely unrelated to any knowledge of corporate functions or operations. His brief stints working for private companies invariably ended quickly, with him being let go. *See, e.g.* Castleman Tr. Test, *Caruso v. Sprinkmann Sons Corp. of Illinois*, 00-L-315, Sangamon Co., Illinois, June 11, 2002 at 187:12-189:5 (attached as Ex. I). Nothing suggests that Castleman has personal knowledge about

the internal motivation for any company's actions.

There is no relevant field where Castleman practices as an expert outside the courtroom that qualifies him as an expert inside the courtroom. Castleman's "profession," such that it is, is testifying as a retained advocate. For decades, approximately 95% of his income has been based on his expert testimony in asbestos cases. Castleman Tr. Test. *Shipley v. Pneumo Abex Corp.*, No. 10-L-38, McLean Co., Ill., Oct. 14, 2010 at 189:18-22 (attached as Ex. J); Castleman Tr. Test., *Shoopman v. Honeywell Int'l*, No. 09-159, McLean Co., Ill., June 22, 2010 at 82:23-83:3 (attached as Ex. K); Castleman Dep. (Ex. H) at 132:10-21. Accordingly, this Court should exclude Castleman from testifying because he has no qualifications to testify in any relevant field.

**B.      Castleman's Opinions Are Not Reliable.**

Even if Castleman had some relevant field of expertise (which he does not), his proposed testimony is not reliable, providing a second reason to exclude his testimony. Since *Daubert*, "parties relying on expert evidence have had notice of the *exacting* standards of reliability such evidence must meet." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000) (emphasis added).

The reliability of an expert's principles and methods should be examined by (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community. 509 U.S. at 593-94. This test "make[s] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

Castleman has no field of expertise outside serving as an expert witness, so this Court has no way to ensure he applies the same rigorous analysis to his courtroom opinions as he does outside it. Castleman calls himself an expert in "occupational and environmental health policy" (Castleman Rep. (Ex. L) at 1), but he actually is a self-employed anti-asbestos advocate. *See*

Castleman Cong. Test. (Ex. E) at 82-86; Barry Castleman Cong. Test. (Ex. F) at 5-13. He holds a viewpoint, which is consistent with Plaintiffs' theory of the case and closing argument, and he selects and then interprets documents consistent with his personal views. For example, he gratuitously dismisses the author of a 1938 U.S. Public Health Service study regarding the level of exposure to asbestos that would <u>not</u> cause disease as having used "weasel words." Castleman Trial Test., *Bieble v. AC and S*, No. 96-231701, Circuit Court for Baltimore Co., Oct. 9, 1996 at 2780-81 (attached as Ex. M). He charges the head of the Harvard School of Public Health, who authored the first epidemiological published study of asbestos insulators in navy shipyards, of "incompetence," despite the fact that Castleman has never conducted an epidemiological study of any kind. Castleman Trial Test., *Bieble v. AC and S*, No. 96-231701, Circuit Court for Baltimore Co., Oct. 8, 1996 at 2579  (attached as Ex. N). As the Ninth Circuit has repeatedly held, however, "an expert's inference or assertion must be derived by the scientific method to be admissible." *Ellis*, 657 F.3d at 982 (citations omitted).

Other Courts have determined that Castleman's opinions are not based upon any reliable methodology and must therefore be excluded on that basis:

> I must say that for him to do what he is doing, either there has to be some scientific or equivalent basis to test whether or not other experts in the field could do what he did, without making it an entirely subjective proposition.  There is no showing of that.  So, what he has done, if you ask me, is purely subjective.

*Flood*, Tr. (Ex. A) at 13:3-9.

Plaintiffs cannot meet their burden to show that Castleman's proposed testimony is based on reliable methods. Each of the *Daubert* factors shows a lack of any reliability:

**(1)      Whether the scientific theory or technique can be (and has been) tested**

> There is no hypothesis in Castleman's "theory or technique."  He only reads the materials he wants to read.  He believes that if he is unaware of relevant material, he has no obligation to look for it.  *See* Castleman Dep. (Ex. H) at 48:17-20.

**(2)      Whether the theory or technique has been subjected to peer review and publication**

Schiff Hardin LLP
Attorneys At Law
San Francisco

Castleman's book (which serves as the basis for his expert report) clearly was reviewed by the asbestos plaintiffs' bar, but has never been subject to scientific peer review. Neither has his research.

**(3)     Whether a particular technique has a known potential rate of error**

It is impossible to consider Castleman's error rate because he has never considered opinions contrary to his own. He reads what he wants to read and cites what he wants to cite. The fatal flaw in Castleman's technique is he has never done anything to investigate, research, or even consider the possibility that his historical views are incorrect.

**(4)     Whether the theory or technique is generally accepted in the relevant scientific community**

There are absolutely no standards to Castleman's "theory or technique." His opinions are offered in litigation, and are designed to assist lawyers, not the scientific or medical community. Castleman is a one-off, so there is no scientific community of others who could assess, let alone accept, what he does as legitimate science.

*Daubert* explained that an expert's "knowledge connotes more than subjective belief or unsupported speculation," 509 U.S. at 589, but Castleman's knowledge is nothing more than his subjective view of history based on hand-picked documents that "found" him. Castleman Dep. (Ex. H) at 48:17-20 ("That material has its way of finding me."). Castleman's opinions are neither "based on sufficient facts or data," nor "the product of reliable principles and methods," as *Daubert* and Rule 702 demand.

### C.     Castleman's Opinions Are Not Relevant.

Because Castleman follows no methodology, and because his opinions are just an advocacy-based interpretation of documents, his testimony will not assist the members of the jury and is accordingly irrelevant and inadmissible. *See, e.g., United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) ("unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403."); *In re Trasylol Prods. Liab. Litig*., 709 F.Supp.2d 1323, 1346 (S.D. Fla. 2010) (expert's testimony "will not assist trier of fact," where testimony "mostly consists of a factual narrative of [drug's] regulatory history and summaries of [pharmaceutical defendant's]

internal documents"); *In re Prempro Prods. Liab. Litig.*, 554 F.Supp.2d 871, 886 (E.D. Ark. 2008) ("If an expert does nothing more than read exhibits, is there really any point in her testifying as an expert?").  Castleman himself admits that "it really doesn't aid the jury a great deal to know what I think about all this stuff." (*Supra*, pg. 6).  Plaintiffs have able legal counsel to advocate their position about what the jury should conclude from the historical evidence.

If Castleman is allowed to testify as to the substance of historical medical or corporate literature, however, he should not be allowed to draw his own inferences from those documents and characterize those inferences for the jury, nor should Castleman be permitted to opine on what the author "meant" to convey in the documents themselves or what a reader should have concluded from these materials.[1]  Castleman's subjective inferences may not be properly substituted for the inferences that will be drawn by the members of the jury when they are presented with the relevant evidence. *United States v. One Parcel of Property*, 930 F.2d 139, 141 (2d Cir. 1991) (expert testimony on issue of party's knowledge properly excluded because "[t]his was as simple question for which the jury needed no help."). There is no such thing as an expert inference-drawer, but that is exactly what Plaintiffs seek to present to the jury through Castleman.

## CONCLUSION

The latitude that expert witnesses are given to offer opinion testimony is based upon their ability to establish the reliability and objectivity fostered by rigorous application of the scientific method. Barry Castleman eschews the scientific method and is unworthy of the privilege of giving opinion testimony. OI respectfully requests that this Court exclude Barry Castleman from testifying in this case or, if he is allowed to testify as to the substance of available medical and scientific literature, he should be precluded from interpreting the meaning of those documents for

---

[1] Indeed, Courts within this Circuit have already found him unqualified to do so.  (*In re Related Asbestos Cases*, 543 F. Supp. at 1149-50) ("[W]e are not persuaded that Mr. Castleman, as a layperson, possesses the expertise necessary to read complex, technical medical articles and discern which portions of the articles would best summarize the authors' conclusions.")

Schiff Hardin LLP
Attorneys At Law
San Francisco

1    the jury.

2       **5.    Preclude the "Every Exposure" Theory, "Cumulative Dose"    Theory, and**
        **Any Similar Theory of Causation Proffered By Plaintiffs' Experts.**

3

4       Plaintiffs' experts, Dr. Samuel Hammar and Dr. Arnold Brody, intend to testify that all, or

5    each and every one, of Mr. LeFevre's and Mr. Olson's exposures to asbestos was a substantial

6    factor in causing their illnesses. Although Plaintiffs' experts may make semantic adjustments to

7    this opinion, the underlying theory is simply that every exposure is "guilty," and therefore a legal

8    cause, because science cannot prove it "innocent."[2] In this case, as to both Mr. LeFevre and Mr.

9    Olson, Dr. Hammar provided identical opinions that:

10              [A]ll occupational and bystander exposures to asbestos above the
                concentration identified in the case-control epidemiology studies
11              and within the latency period have the ability to contribute to the
                causation of mesothelioma. . . (Doc. #156, p. 17, #169 p. 13)

12      And, as to both Mr. LeFevre and Mr. Olson, Dr. Hammar provided identical opinions that

13   each had exposures that:

14              . . . were above background levels and contributed to [their] total
                dose of asbestos exposure and   therefore contributed to the
15              development of [their] mesothelioma. (Doc. #297, p. 5, Doc. #
                298, p. 5)

16      Similarly, Dr. Brody's report in this case provided no opinions specific to Mr. LeFevre or

17   Mr. Olson, but merely stated his opinion that:

18              In the case of a person who has developed an asbestos-related
                cancer, it is that individual's cumulative dose which has caused the
19              disease. . . Once a person develops an asbestos-related cancer, it is
                not possible to exclude any of the person's above-background
20              exposures to asbestos from the causal chain. Each and every
                exposure to asbestos that an individual with mesothelioma
21              experienced in excess of a background level contributes to the
                development of the disease. (Doc. #175, p. 16-17)

22
     ─────────────────────
23   [2] Q: Which means that because neither you nor anyone can tell which fiber or fibers was the actual cause
     of the cancer, you have to presume all are guilty, unless and until someone can prove that any particular
24   exposure did not cause the cancer?
     A: Right.
25   Dep. of Dr. Hammar, *Fischer v. Am. Standard, Inc.*, Milwaukee County, Wisconsin, Case No. 05-CV-
     009213, taken on October 21, 2008, attached as Ex O.
26

These causation theories are contrary to the substantive law governing this case, are contrary to medical science, and fail Rule 702 and *Daubert* scrutiny.

Plaintiffs have conceded that maritime law applies to Mr. LeFevre's case, and under maritime law, "proof of substantial exposure is required for a finding that a product was a substantial factor in causing injury." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005). Courts applying maritime law accordingly have rejected causation theories such as those offered by Plaintiffs' experts here, holding that an expert opinion that each of the plaintiff's occupational exposures substantially contributed to his disease was not sufficient to prove that exposure to a particular defendant's product was a "substantial factor." Under Washington law, which applies to Mr. Olson's case, courts have precluded experts from testifying as to similar "cumulative" causation theories, because they are "not a sound scientific methodology and [are] not generally accepted in the field of epidemiology or occupational medicine." *Free v. Ametek*, No. 07-3-04092-9, 2008 WL 728387 (Wash. Super. Ct. Feb. 29, 2008); *Anderson v. Asbestos Corp., Ltd.,* No. 05-2-04551-5SEA (Wash. Super. Ct. Oct. 31, 2006).

More than thirty other federal and state courts across the country, since 2005, have also rejected such causation theories in asbestos cases. OI requests that this Court, in its gatekeeping role under Rule 702 and *Daubert*, follow the lead of the state and federal courts across the nation to preclude Plaintiffs' experts from testifying that each exposure caused the Plaintiffs' illnesses. Such opinions are devised for litigation purposes only, are unsupported by and contrary to medicine and science about how cancer develops, and should be excluded.

### A.   The Cumulative Exposure Opinion Is Not Scientific, But Is A Speculative Theory That Was Generated Solely For Use in Litigation.

In determining whether an expert's opinion should be admitted under *Daubert* and Rule 702, the Ninth Circuit has held that "[o]ne very significant fact is whether the expert has developed [his] opinions expressly for purposes of testifying, since a scientist's normal workplace

is the lab or the field, not the courtroom or the lawyer's office." *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594 (9th Cir. 1996) (internal quotes omitted). "If these guarantees of reliability are not satisfied, the expert 'must explain precisely how [he] went about reaching [his] conclusions and point to some objective source ... to show that [he has] followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in [his] field." *Id.* at 597 (finding that although expert had published an article before his testimony was challenged, he was at that time already a professional plaintiff's witness and it was reasonable to presume his opinion was "influenced by a litigation-driven financial incentive."). Here, it is clear that Dr. Hammar's and Dr. Brody's cumulative exposure theories were generated solely for purposes of litigation. Additionally, they have failed to precisely explain how they reached their conclusion or point to objective sources supporting it.

Dr. Hammar has expressly admitted that his opinion that all exposures are causative is not scientific, agreeing that it is an "unproven hypothesis" and stating that there is "no way to really prove" it:

> Q: Is it still your opinion from the *Free* hearing that you participated in that each and every exposure to asbestos is a substantial contributing factor is an unproven hypothesis?
>
> A: Well, I think I went through that with Judge Barnett very, very carefully. And if she didn't understand that, I don't think she listed very carefully. But the answer to your question is yes.

Dep. of Dr. Hammar, *Beadle v. Ametek*, Vol. II (May 7, 2008), attached as Ex.P.

> Q. Do you agree with the concept that each and every exposure to an asbestos fiber contributed – contributes to the development of asbestosis as an unproven hypothesis?
>
> A. Well, you know, I don't think – there's no way to really prove that or to really evaluate that.

Dep. of Dr. Hammar, *Smith v. Bucyrus International* (Jan. 4, 2011), attached as Ex. Q.

Dr. Hammar has also implicitly admitted that his opinion is not based on science. Tellingly, his opinion appears to have fluctuated over the years, not in accord with science, but in

keeping with court rulings in the various jurisdictions in which he testified. For example, Dr. Hammar testified in 2002 that "there's no threshold below which any type of occupational or bystander exposure to asbestos will not cause an increased incidence of mesothelioma." Dep. of Dr. Hammar, *Miller v. Bondex* (February 14, 2002), attached as Ex. R. Similarly, in 2006, he opined that there is no amount of asbestos exposure that would be considered insubstantial.  Dep. of Dr. Hammar, *Gosz v. American Standard* (August 31, 2006), attached as Ex. S. Then, in 2008, contrary to this prior testimony, Dr. Hammar opined that "every exposure" was an unproven hypothesis, and that it was instead his opinion that .1 fiber/cc years was the "threshold" for an exposure to be considered a substantial factor in causing disease. Dep. of Dr. Hammar, *Beadle v. Ametek, Vol. II* (May 7, 2008), attached as Ex. T.

Dr. Hammar offers no reason – scientific or otherwise – for the evolution of his opinions between 2006 and 2008. However, in that time frame, no less than three courts barred him from opining that "each and every exposure" is a substantial contributing factor. *Anderson v. Asbestos Corp.*, No. 05-2-04551-5SEA (Wash. Super. Oct. 31, 2006) (attached as Ex. U); *Georgia-Pac. Corp. v. Stephens*, 239 S.W.3d 304 (Tex. App. 2007); *Free v. Ameteck*, No. 07-2-04091-9SEA, 2008 WL 728387 (Wash. Super. Feb. 28, 2008). In response to those courts' rulings, it would appear that Dr. Hammar revised his opinions in order to continue to testify.

In 2013, in addition to the three courts mentioned above, a federal district court in Utah barred Dr. Hammar from offering his "every exposure" theory to the jury, finding it was inadmissible under Rule 702, Rule 403, and as *ipse dixit*:

> Hammar's opinion is based on a theory of causation that has variously been described as the "every exposure" or "every breath" theory. Defendant asserts that this theory is without scientific foundation, that it is mere speculation designed for litigation, and that it is inadmissible pursuant to Rule 702. . . the court agrees with defendant's position. Dr. Hammar's opinion is, as a matter of law, unsupported by sufficient or reliable scientific research, data, investigations, or studies, and is inadmissible under Rule 702.

*Smith v. Ford Motor Co.*, No. 2:08-CV-630, 2013 WL 214378 (D. Utah Jan. 18, 2013).

Dr. Brody's formulation of his cumulative dose theory is equally unscientific, and he also has been barred by courts from testifying that "every exposure" caused a plaintiff's disease. *See, e.g., Smith v. Kelly-Moore Paint Co., Inc.,* 307 S.W.3d 829, 837 (Tex. App. 2010). In an attempt to show scientific support of his claim that "each and every exposure" contributes to the development of mesothelioma, Dr. Brody's report cites to a publication by Laura Welch. Welch, who testifies as an expert for plaintiffs in asbestos litigation, *see, e.g., Dixon v. Ford Motor Co*., 206 Md. App. 180, 185 (2012) *cert. granted*, 429 Md. 303 (2012) *and rev'd*, 433 Md. 137 (2013), contends that because exposures at current regulatory levels result in excess mesotheliomas, "the consensus of the scientific community" is that even brief or low-level exposures should be considered causal. L. Welch, *Asbestos exposure causes mesothelioma, but not this asbestos exposure: An amicus brief to the Michigan Supreme Court.* Int'l J. Occup. & Envtl. Health 13: 318–327 (2007), attached as Ex. V. Welch herself cites nothing in support of her "consensus" claim, and in fact, although the Welch publication to which Dr. Brody cites appears in the International Journal of Occupational and Environmental Health, it is in fact a reprint of a document written by Welch for the purposes of legal advocacy – an amicus brief to the Michigan Supreme Court. Dr. Brody offers no actual scientific studies in support of his theory.

Plaintiffs' experts' exposure theory conflicts with fundamental medical science, because it presumes to find a cause-and-effect relationship in the absence of evidence of actual cause. In fact, Dr. Hammar admits that his opinion is based on his inability to prove a negative, not proof of a positive, *i.e.,* that because one cannot prove which fiber actually caused a mesothelioma, one must therefore assume that all of the fibers are guilty. Dep. of Dr. Hammar, *Emrick v. ACandS,* Multnomah Co., Oregon, Case No. 0002-02019, Trial Tr. Vol. 32-A, p. 105 (Oct. 27, 2010), attached as Ex. W; Dep. of Dr. Hammar, *Olsen v. Owen-Illinois, Inc*., King Co., Washington, Case No. 95-2-32619-6SEA p. 20-21, 32 (May 9, 1997), attached as Ex. X. As the *Free* court concluded, this exposure theory is merely based on speculative analogies, but "they are not good science and they do not make good law." *Free*, 2008 WL 728387. This theory "is not a sound

scientific methodology and is not generally accepted in the field of epidemiology or occupational medicine." *Id.* Indeed, this theory appears in only one setting — asbestos litigation. Drs. Hammar and Brody have not published this theory in any peer-reviewed medical journal. Nor has any other medical doctor or scientist. Drs. Hammar and Brody cannot point even to one peer-reviewed medical journal that substantiates or establishes that this theory is scientifically correct. Because the cumulative exposure theory is unscientific, speculative, and created entirely for litigation, it should be excluded under *Daubert*.

### B.    The Cumulative Exposure Theory Is Not Relevant.

Since *Daubert*, the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. Relevance under *Daubert* is not the liberal standard of relevance of Federal Rule of Evidence 401. *Daubert* II, 43 F.3d at 1321. It is a fundamental requirement that expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702). The requirement is "fit" between the expert testimony and an issue in the case, demanding "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 591-92.

What is the "pertinent inquiry" here? Under maritime law, a plaintiff is required to show that his exposure to a defendant's product was a substantial factor in causing his disease, and "proof of substantial exposure is required for a finding that a product was a substantial factor in causing injury." *Lindstrom*, 424 F.3d at 492. The "every exposure" theory has been expressly rejected by courts applying maritime law and found to be insufficient proof of causation. *Id.* Rather, maritime law requires proof that a plaintiff was exposed to a particular defendant's asbestos containing product on a frequent, regular, and proximate basis. *See, e.g., Cabasug v. Crane Co.*, CIV. 12-00313 JMS, 2013 WL 6212151 (D. Haw. Nov. 26, 2013) (adopting *Lindstrom*'s frequency, regularity, and proximity analysis and collecting cases from other federal courts applying maritime law and doing the same; noting this view is generally consistent with

Schiff Hardin LLP
Attorneys At Law
San Francisco

the majority of state law cases). Permitting Dr. Hammar and Dr. Brody to testify to these "every exposure" or "cumulative" causation opinions would nullify a clear statement of the applicable maritime law standard.

Under Washington law, "proximate causation has two elements, cause in fact and legal causation. 'Cause in fact refers to the 'but for' consequences of an act, that is, the immediate connection between an act and an injury.' Legal causation is based on policy considerations determining how far the consequences of an act should extend." *Smith v. Preston Gates Ellis, LLP*, 135 Wn. App. 859, 864, 147 P.3d 600 (2006). Washington law employs the "substantial factor" test for cause in fact in asbestos cases. *Mavroudis v. Pittsburgh-Corning Corp.*, 86 Wn. App. 22, 28, 935 P.2d 684, 687 (1997). That substantial factor must be "important or material" and "not one that is insignificant," *id.*, and it demands evidence of more than a minimal dose of asbestos. *See id.* (substantial factor requires any one of the causative factors "operating alone" to be "sufficient to cause the injury").

Dr. Hammar's and Dr. Brody's causation theory was designed to, and would, reverse the legal burden of proof, and read the word "substantial" out of maritime law and Washington law. This theory must be seen for what it is, and what it is not. It is a theory about the hypothetical risk that a person will get an asbestos-related disease. It is not evidence of the actual cause of a diagnosed disease. As shown in the attached declaration of Dr. Lawrence Weiss, a cancer causation research scientist, this theory is contrary to what science knows and understands about how cancer is caused. Under *Daubert*, Plaintiffs' experts' theory fails to speak "clearly and directly" to the causation issue disputed in this case and should be excluded. *Daubert II*, 43 F.3d at 1321 n.17.

## C.    The Cumulative Exposure Theory Is Not Reliable.

In determining reliability, the Supreme Court provided a nonexhaustive list of four factors: (1) whether the theory or technique the expert employed can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) whether it is generally accepted

in the scientific community; and (4) whether the known or potential error rate is acceptable. *Daubert*, 509 U.S. at 593-94. The Ninth Circuit also made clear since *Daubert* that an expert's "bald assurance of validity" is never sufficient to establish reliability; the party proffering the expert must present "objective, independent validation of the expert's methodology." *Daubert II*, 43 F.3d at 1316.

Plaintiffs' experts' theory represents a highly unscientific and entirely unreliable approach to causation. It simply fails all four of the *Daubert* criteria. It has not been published by Dr. Hammar, Dr. Brody, or anywhere in the peer reviewed medical literature. It has never been subjected to the scientific method. It cannot be tested and it has no known error rate. It is only in the courtroom, far from the scrutiny of the scientific method, that this theory is uttered. Rather than "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," *Kumho Tire Co.*, 526 U.S. at 152, Plaintiffs' experts ignore the rigors of medical science and contradict the fundamental principles of carcinogenesis and toxicology.

### D. Dr. Hammar's and Dr. Brody's Theory is At Odds With Accepted Principles of Carcinogenesis.

In support of this motion, in addition to the case law set forth above, Owens-Illinois relies upon the declaration of Dr. Lawrence M. Weiss, M.D., the medical director of one of the largest molecular diagnostic laboratories in the country focusing on cancer. Dr. Weiss opines that the cumulative exposure theory is not medically or scientifically accurate under the science of carcinogenesis. Lawrence M. Weiss, M.D. (Ex. Y) Decl. ¶¶ 1-12. The principles of carcinogensis set forth by Dr. Weiss are not refuted by any information in Dr. Hammar or Dr. Brody's reports. Indeed, their theory does not comport with the current and generally accepted scientific evidence about how cancer develops, nor is it even a recognized theory of how asbestos causes mesothelioma. *Id.* at ¶ 9.

The medical science of carcinogenesis rests on several principles. All cancers begin in a

Schiff Hardin LLP
Attorneys At Law
San Francisco

single cell. *Id.* at ¶ 4. In our human bodies, cells divide and grow all the time, including cells that make up the mesothelium, the very thin lining surrounding the lungs, abdomen, heart, and other organs. *Id.* These new cells created as the result of cell division are intended to be and normally are exact replicas of their parent cells. *Id.* During the process of cell division, however, errors (known as mutations) can occur, resulting in a daughter cell that is identical to the parent in all respects except the mutation. *Id.* Subsequent cells, from the division of the daughter cell containing the mutation, will continue to pass the mutation on to their daughter cells. *Id.* Eventually, one of the cells from the cell line with the first mutation may eventually acquire a second mutation during the process of cell division. *Id.* The resulting daughter cell and each of its subsequent progeny would then have both mutations. *Id.* The process continues to repeat itself, as subsequent daughter cells carrying the mutations develop additional mutations during the process of cell division that are passed on to their progeny. *Id.* Ultimately, one of the daughter cells carrying the accumulated mutations acquires a final mutation during cell division that allows that cell to begin to divide out of control, the hallmark of the beginning of cancer. *Id.* That cell is known as the cell-of-origin. *Id.*

Current scientific and medical evidence indicates that at least six to ten principal mutations are required for a cell to acquire all of the necessary properties to divide out of control and begin a cancer. *Id.* While the exact number of mutations, and the timing and sequence of the mutations necessary for a cell in a mutated cell line to begin a malignant mesothelioma is not yet known, medical researchers know that the number of mutations is small, and are discrete events. *Id.* In mesothelioma, the cell-of-origin resides in a fixed location in the mesothelium—one of millions of mesothelial cells in an average adult. *Id.* Although the number of discrete mutation events, which result in that cell ending up with the requisite number of mutations occur over a lengthy period of time, they all must occur, one at a time, in the same cell-sized location in the mesothelium. *Id.* Insults to the vast majority (99.999%) of the other mesothelial cells in the body—whether caused by natural processes, radiation, inherited mutations, or other factors like

Schiff Hardin LLP
Attorneys At Law
San Francisco

asbestos—do not result in a malignancy because the daughter cells never acquire the necessary additional mutations. *Id.* There are a number of reasons, including the body's normal defense mechanisms, the mutations that occur being unrelated to the development of a malignant cell, or the cells with mutations self-destructing rather than dividing and passing on the accumulated mutations. *Id.*

Given this scientific and medical evidence, Plaintiffs' experts' causation theory is scientifically incorrect. *Id.* at ¶ 5. Under their theory, *all* exposures result in all of the mutations all the time in a person who develops mesothelioma. And under this theory, if all exposures are causative, the mesothelioma would occur all over the entire mesothelial surface since all of the exposures are causative. But science knows that malignancies develop in discrete locations. *Id.* at ¶ 4. This theory is tantamount to saying—despite the principles of carcinogenesis—all exposures cause mesothelioma, which in turn means that there is no threshold for mesothelioma causation and that each exposure is so medically significant to be regarded as a cause. *Id.* at ¶ 5. There is no support in any scientific study of cancer causation for this theory, nor is it consistent with what medical science knows about how cancers such as mesotheliomas are caused. *Id.* at ¶ 5. There also is no published scientific or medical paper which propounds the theory that mesothelioma is caused by the accumulation of asbestos exposures. *Id.* at ¶ 9. It is highly unlikely that such a paper ever could be published because the theory is contrary to the accepted scientific and medical evidence, as explained above, and is not consistent with any of the accepted theories of carcinogenesis. *Id.*

Plaintiffs' experts did not subject their opinions to the well-accepted theories of carcinogenesis. They also did not, and cannot, identify any scientific studies to confirm a "dose" of asbestos that actually causes disease. *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1133 (9th Cir. 2002); *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1165-66 (E.D. Wash. 2009). There is no dispute that being exposed to asbestos above a disease threshold merely creates a *risk* of disease and does not invariably *cause* a disease to occur.

Schiff Hardin LLP
Attorneys At Law
San Francisco

1

### E.  Courts Nationwide Have Rejected the Cumulative Exposure Theory.

2

Other courts rejecting this opinion include the Sixth Circuit Court of Appeals (three

3 times), at least eight federal district courts, the highest courts of Texas, New York, Pennsylvania,

4 and Virginia, and trial and state appellate courts in Texas, Georgia, Florida, Delaware, Ohio,

5 Mississippi, and Pennsylvania, among others.[3] Four more federal district courts have rebuked this

6 theory just this year with very strong language: "It is questionable whether it can even properly be

7 called a theory." *Smith*, 2013 WL 214378, at *5; *accord Anderson v. Ford Motor Co.*, No. 06-

8 CV-741, 2013 WL 3179497 (D. Utah June 24, 2013); *Sclafani v. Air & Liquid Sys. Corp.*, No.

9 12-CV-3013, 2013 WL 2477077 (C.D. Cal. May 9, 2013); *Wannall v. Honeywell Int'l, Inc.*, No.

10 10-cv-351, 2013 WL 1966060 (D.D.C. May 14, 2013).

11

State supreme courts have also rejected these any exposure theories. Most recently, the

12

13     [3] Federal court cases include *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 488 (6th Cir.
2009); *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 483 (6th Cir. 2005); *Moeller v. Garlock Sealing
14 Techns., Inc.*, 660 F.3d 950, 955 (6th Cir. 2011); *Anderson v. Ford Motor Co.*, No. 06-CV-741, 2013 WL
3179497 (D. Utah June 24, 2013); *Sclafani v. Air & Liquid Sys. Corp.*, No. 12-CV-3013, 2013 WL
15 2477077 (C.D. Cal. May 9, 2013); *Smith*, 2013 WL 214378, at *5; *Wannall v. Honeywell Int'l, Inc.*, No.
10-cv-351, 2013 WL 1966060 (D.D.C. May 14, 2013); *Bartel v. John Crane, Inc.*, 316 F. Supp. 2d 603,
16 605 (N.D. Ohio 2004), *aff'd sub nom. Lindstrom*, 424 F.3d at 488.; *Newkirk v. ConAgra Foods, Inc.*, 727
F. Supp. 2d 1006 (E.D. Wash. 2010), *aff'd*, 438 Fed. App'x 607 (9th Cir. 2011); *Henricksen v.
17 ConocoPhillips Co.*, 605 F. Supp. 2d 1142 (E.D. Wash. 2009); *In re W.R. Grace & Co.*, 355 B.R. 462
(Bankr. D. Del. 2006), *appeal denied*, 2007 WL 1074094 (D. Del. Mar. 26, 2007); *see also Barabin v.
18 AstenJohnson, Inc.*, 700 F.3d 428 (9th Cir. 2012) (reversing trial verdict based in part on any exposure
opinion due to trial court's inadequate *Daubert* analysis).
19     State court cases include *Ford Motor Co. v. Boomer*, 2013 WL 119703 (Va. Jan. 10, 2013)
(declining to address any exposure opinion directly but requiring plaintiff's experts to "opine as to what
20 level of exposure is sufficient to cause mesothelioma, and whether the levels of exposure at issue in this
case were sufficient"); *Betz*, 44 A.3d at 27 (affirming *In re Toxic Substances Cases*, 2006 WL 2404008
21 (Pa. Ct. Com. Pl. Allegheny County Aug. 17, 2006)); *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216 (Pa.
2007); *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765 (Tex. 2007); *Parker v. Mobil Oil Corp.*, 857 N.E.2d
22 1114 (N.Y. 2006); *Butler v. Union Carbide Corp.*, 712 S.E.2d 537 (Ga. Ct. App. 2011); *Smith v. Kelly-
Moore Paint Co., Inc.*, 307 S.W.3d 829 (Tex. Ct. App. 2010); *Georgia-Pacific Corp. v. Stephens*, 239
23 S.W.3d 304 (Tex. Ct. App. 2007); *Georgia-Pacific Corp. v. Bostic*, 320 S.W.3d 588 (Tex. Ct. App. 2010);
*Daly v. Arvinmeritor, Inc.*, 2009 WL 4662280 (Ha. Cir. Ct. Broward County Nov. 30, 2009); *In re
24 Asbestos Litig. (Certain Asbestos Friction Cases Involving Chrysler LLC)*, 2008 WL 4600385 (Pa. Ct.
Com. P Phila. County Sept. 24, 2008); *Free*, 2008 WL 728387, at *1 (trial order); *In re Asbestos Litig.
25 (Pena v. Bondex)*, 2007 WL 5994694 (Tex. Dist. Ct. July 18, 2007); *Basile v. American Honda Motor Co.,
Inc.*, 2007 WL 712049 (Pa. Ct. Com. Pl. Indiana County Feb. 22, 2007*); *Brooks v. Stone Architecture,
26 P.A.*, 934 So. 2d 350 (Miss. Ct. App. 2006).

Schiff Hardin LLP
Attorneys At Law
San Francisco

Pennsylvania Supreme Court in a unanimous 53-page decision affirmed the exclusion of testimony based on the any exposure opinion. *Betz*, 44 A.3d 27. The *Betz* court found that the any exposure opinion was in "irreconcilable conflict with itself" because "one cannot simultaneously maintain that a single fiber among millions is substantially causative, while also conceding that a disease is dose responsive." *Id.* at 56. As the overwhelming majority of courts have concluded that these any exposure theories are not reliable expert evidence, OI respectfully requests the same result in this case.

### F. The Prejudicial and Misleading Effect of Plaintiffs' Experts' Causation Theory Far Outweighs Any Probative Value.

Plaintiffs' experts' causation theory should be excluded because its probative value, if any, is substantially outweighed by unfair prejudice that will confuse the issues and mislead the jury. Expert evidence "'can be both powerful and quite misleading because of the difficulty in evaluating it.'" *Daubert II*, 43 F.3d at 1321 n.17 (citations omitted). This theory is designed to, and actually would, mislead the jury to rendering a verdict based on a theory of causation that is contrary to the applicable law and science. Under this theory, Plaintiffs shift the burden of proof on causation by making every defendant disprove its product or conduct was a cause. That is because every exposure is causative until proven otherwise under this theory of causation. *Id.* As other courts have held, "the probative value of such unsupported speculation is substantially outweighed by the danger of unfair prejudice, as well as being confusing, and presenting a danger of misleading the jury," and therefore, it should be excluded. *Smith*, 2013 214378, at *2.

For these reasons, OI respectfully requests that this Court exclude Plaintiffs' experts' causation theory, or any similar theory, under Federal Rule of Evidence 702 and *Daubert*.

### 6. Exclude Susan Raterman Testimony.

OI moves for an order excluding the opinions of Plaintiffs' industrial hygienist, Susan Raterman, regarding either James Olson's or Roy LeFevre's alleged exposures to OI Kaylo and as to any effect any such alleged exposure had on their risk of developing mesothelioma. For an

expert's testimony to be admissible under Federal Rule of Evidence 702, the proponent of that testimony must prove that the expert's opinion is (1) "based upon sufficient facts or data," (2) "the product of reliable principles and methods," and (3) that the expert "has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The trial court has a special gatekeeping obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. This requirement exists "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

It is Plaintiffs' burden to prove that Raterman's opinions are "a product of reliable principles and methods." Fed. R. Evid. 702. A proper scientific methodology "is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry." *Daubert*, 509 U.S. at 593. The Supreme Court identified the following factors for consideration in assessing the reliability of an expert's methodology:

>  (1)   "whether the scientific theory or technique can be (and has been) tested";
>  (2)   "whether the theory or technique has been subjected to peer review and publication";
>  (3)   "whether there is a known or potential error rate"; and
>  (4)   whether the theory or technique is generally accepted in the relevant scientific community."

*Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1064 (9th Cir. 2002) (citing *Daubert*, 509 U.S. at 593-94). Where experts' opinions are not derived from independent research done outside of litigation, "experts must explain the process by which they reached their conclusions and identify some type of objective source demonstrating their adherence to the scientific method." *Domingo v. T.K.*, 289 F.3d 600, 605–06 (9th Cir. 2002).

Schiff Hardin LLP
Attorneys At Law
San Francisco

A.      **Raterman's Opinions As to Mr. Olson's or Mr. LeFevre's Exposure to OI Kaylo, and the Contribution of Those Alleged Exposures to their Risk of Developing Mesothelioma, Are Not Reliable and Are Properly Excluded.**

Despite disclaiming any opinions as to Mr. LeFevre's alleged exposures to OI Kaylo (Raterman Dep., 345:10-13, attached as Ex. Y), and despite failing to offer any opinions at all regarding Mr. Olson's alleged take-home exposures to OI Kaylo in her deposition or in her report, Raterman is being offered to opine on the extent of Plaintiffs' alleged exposures to OI Kaylo and the effect those exposures had on their relative risk of developing mesothelioma. (*See, e.g.*, Dkt. 256-3 at ¶¶ 12, 42; Dkt. 188-1 at pp. 7-8). Specifically, with respect to Mr. LeFevre, Raterman is being offered to testify that Mr. LeFevre was exposed to "significant concentrations of asbestos dust" from OI Kaylo that "would have increased his risk of developing mesothelioma." (Dkt. 188-1 at pp. 7-8). Although Raterman offered no opinions specific to OI Kaylo in her report or deposition with respect to Mr. Olson's alleged take-home exposures, Raterman's subsequently-filed declaration makes clear that her opinion with respect to Mr. Olson is that his alleged household exposure to OI Kaylo "would have increased his risk of contracting mesothelioma." (Dkt. 256-3 at ¶¶ 42). Raterman's opinions regarding these Plaintiffs' exposure to OI Kaylo is nothing more than unsupported speculation. Moreoever, Plaintiffs have not met their burden of showing that Raterman applied *any* methodology, much less a scientifically accepted one, to reach these opinions. Because Raterman's opinions are not the product of reliable principles or methods, they should be excluded.

Unlike Plaintiffs' other experts in this case, Raterman admits that not all exposures to asbestos increase the risk of developing mesothelioma. (Raterman Dep. at 40:7-10; 324:1-325:7) (Ex. Z). Nonetheless, Raterman has undertaken no effort to determine the extent of any exposure Mr. Olson or Mr. LeFevre may have had to OI Kaylo. (*Id.* at 32:9-23; 34:20-35:17). She admits that she has not made any effort at all to quantify either Plaintiff's alleged exposure to Kaylo. (*Id.* at 32:9-15). Instead, Raterman's opinions regarding the extent of these Plaintiffs' exposure to OI

Schiff Hardin LLP
Attorneys At Law
San Francisco

Kaylo is based <u>solely</u> on the testimony of a few witnesses, none of whom have any connection with these Plaintiffs, who place Kaylo somewhere within a several-hundred acre shipyard. (Dkt. 256-3 at ¶¶ 12, 42). Raterman did not identify *any* testimony or other evidence that Kaylo was ever used or disturbed by Mr. Olson's father or Mr. LeFevre or that Kaylo was ever used in their presence. Absent such evidence, Raterman cannot reliably opine on the extent of their alleged exposure to Kaylo, as Raterman herself admits. (Raterman Dep., 292:21-293:2 (admitting that a product being used at one location does not cause the release of fibers everywhere within the shipyard); 262:6-18 (same)).

Raterman lacks any evidence at all regarding the nature or extent of any exposure either Mr. Olson or Mr. LeFevre had to OI Kaylo. Nor has Raterman undertaken any analysis or effort to determine those facts. The evidence she does have allegedly placing Kaylo somewhere at PSNS during the relevant time frames is, by Raterman's own admission, insufficient to establish these Plaintiffs' exposure to that product. *Id.* Raterman has identified no reliable basis for her opinions regarding Mr. Olson's or Mr. LeFevre's alleged exposure to OI Kaylo. Without any evidence that Kaylo was ever used or disturbed anywhere around Mr. LeFevre or Mr. Olson (or his father), Raterman's opinions regarding the extent of their exposure to it, and the health significance of such alleged exposures, is merely her own subjective and unsubstantiated speculation. Under Rule 702, permissible expert testimony "does not include unsubstantiated speculation and subjective beliefs." *Diviero v. Uniroyal Good Rich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997). There has been no showing that Raterman's opinions are based on sound science or that they are the product of an objective, independently-validated methodology. *Cf. Daubert*, 43 F.3d at 1136. In light of her admissions that the mere presence of a product at a worksite is insufficient to prove exposure, Raterman's opinions to the contrary can only be considered the *ispe dixit* of Raterman herself. Her opinions are therefore rightly excluded by this Court in the proper exercise of its gate-keeping function. *Joiner*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that

is connected to existing data only by the *ipse dixit* of the expert.").

**B.     Raterman's Opinion Regarding Increased Risk is Not Helpful and is Properly Excluded.**

Throughout her reports and her deposition testimony, Raterman carefully avoids providing any medical opinion on causation, recognizing that she lacks the requisite qualifications to render such opinions. In an effort to sidestep the requirements of *Daubert*, however, Raterman instead offers the testimony that these Plaintiffs' alleged exposures to Kaylo "increased [their] risk of contracting mesothelioma." (Dkt. 256-3 at ¶¶ 12, 42). Raterman's opinions regarding any alleged increase in risk, however, are contrary to the operative legal standards applicable to this case and are therefore not helpful to the jury. They are properly excluded.

Maritime law, which Plaintiffs concede is applicable to Mr. LeFevre's claims against OI, requires Plaintiffs to establish that Mr. LeFevre's alleged exposure to OI Kaylo was high enough to be considered a "substantial factor" in the development of his mesothelioma. *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005). "In other words, proof of **substantial exposure** is required for a finding that a product was a substantial factor in causing injury." *Id.* (emphasis added). Under applicable law, "a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Id.* Those legal standards notwithstanding, Raterman's testimony is that, because Kaylo was present somewhere at PSNS, Mr. Olson and Mr. LeFevre must have been exposed to it, and those exposures increased their risk of contracting mesothelioma. As is readily apparent, Raterman's proffered testimony is nothing more than Plaintiffs' attempt to sidestep the controlling legal standard on causation in an effort to establish liability where none can exist under applicable law. *See Lohrmann*, 782 F.2d at 1162 (holding that the argument that placing a product at a worksite is sufficient to create a jury question on causation is "contrary to the [applicable] law of substantial causation."). Yet the substantive law on causation is not subject to nullification at the whim of Plaintiffs' experts. Because Raterman's testimony is wholly untethered to the questions the jury will be asked to consider with respect to

Schiff Hardin LLP
Attorneys At Law
San Francisco

Mr. LeFevre's claims, it cannot be helpful to the jury and should be excluded for this additional reason as well.

The same analysis is applicable to the claims asserted on behalf of Mr. Olson. Under Washington law, Plaintiffs must show that Mr. Olson's "alleged exposure to [defendants'] asbestos products was a substantial factor in causing [their] mesothelioma." *Morgan v. Aurora Pump Co*., 159 Wash. App. 724, 739, 248 P.3d 1052, 1061, review denied, 172 Wash. 2d 1015, 262 P.3d 63 (2011). Factors relevant to causation in an asbestos-related disease case include "(1) plaintiff's proximity to the asbestos product when the exposure occurred and the expanse of the work site where asbestos fibers were released; (2) the extent of time the plaintiff was exposed to the product; (3) the types of asbestos products to which plaintiff was exposed and the ways in which the products were handled and used, and (4) the evidence presented as to medical causation of the plaintiff's particular disease." *Id.*, 159 Wash. App. at 730, citing *Lockwood v. AC & S, Inc*., 109 Wash. 2d 235, 248–49 (1987). As noted above, Raterman was unable to point to any evidence showing the proximity, dose, or extent of Mr. Olson's alleged exposures to OI Kaylo. Her opinion regarding Mr. Olson's alleged increased risk of developing mesothelioma simply by virtue of the alleged presence of Kaylo at PSNS at some point in time is contrary to Washington law on substantial factor causation and is therefore unhelpful to the jury.  It should therefore be excluded.

### C.    Raterman's Opinions Regarding Wayne Olson's Exposure Are Irrelevant, Not Helpful to the Jury, And Are Properly Excluded.

In response to various Defendants' motions for summary judgment, Raterman submitted a declaration setting forth various opinions regarding Mr. Olson and Mr. LeFevre's alleged exposure to different asbestos-containing products. (Dkt. 256-3). In her declaration, Raterman provided the opinion that James Olson's brother, Wayne, was a source of James Olson's alleged take-home exposure to asbestos. (*Id.* at ¶ 42). Owens-Illinois respectfully requests that this Court bar any evidence, testimony or argument regarding any exposure Mr. Olson may have had as a

1    result of his brother Wayne's work at PSNS as irrelevant and unfairly prejudicial.

2        Plaintiffs have not alleged that James Olson was exposed to asbestos, let alone OI Kaylo,

3    by virtue of his brother Wayne's work at PSNS. (See Fourth Am. Compl., Dkt. 87).  Instead,

4    Plaintiffs' allegations regarding Mr. Olson's alleged take-home exposures are as follows:

5        Oscar Olson worked as an electrician at Puget Sound Naval Shipyard and was
        exposed to defendants' asbestos containing products on a regular basis in the
6        course of his work there.  These fibers adhered to **the senior Olson's person,
        shoes and work clothes**, which he wore home each day, contaminating the home
7        environment.  James L. Olson resided in the family home from 1952 to 1971 and
        was exposed to asbestos fibers brought home **from his father's contaminated
8        work place** on a daily basis there.

9    (Dkt. 87 at ¶ 3.4) (emphasis added).

10       As Wayne Olson is not alleged to have been a source of take-home exposure to James

11   Olson, allowing Raterman's proffered testimony would be wholly irrelevant to any issue that the

12   jury will be asked to decide in this case. Any argument, reference or testimony regarding James

13   Olson's alleged take-home exposure to asbestos from his brother Wayne Olson should therefore

14   be precluded.

15       **D.    Raterman's Opinions of Exposure to Kaylo at Locations Other than PSNS
            are Unreliable and are Without Support in the Record.**

16

17       This Court should bar any opinion, evidence or other testimony that Mr. LeFevre was

18   exposed to OI Kaylo anywhere other than during the overhaul of the USS Atlanta at PSNS as

19   lacking a proper evidentiary foundation.[4] In her initial report, Raterman provided a generalized

20   opinion regarding Mr. LeFevre's exposures to various asbestos-containing products aboard

21   various naval ships, including the USS Atlanta, USS Cunningham and the USS Rodman. (Dkt.

22   188-1 at p. 8, ¶ C). To the extent Raterman's opinion is that Mr. LeFevre was exposed to OI

23   Kaylo aboard the USS Cunningham or the USS Rodman, there is no reliable evidentiary

24   foundation for that opinion. Indeed, Plaintiffs have effectively conceded that their only evidence

25   _____

26   [4] Of course, OI does not concede that there is any evidence that Mr. LeFevre was exposed to
     asbestos from OI Kaylo at PSNS or aboard the USS Atlanta.

of exposure to OI Kaylo is the alleged presence of Kaylo at PSNS during the brief overhaul of the USS Atlanta during the late-1940s. (*See* Dkt. 256, p. 2). Raterman did not identify any evidentiary basis for her opinions, to the extent she has them, regarding Mr. LeFevre's alleged exposures anywhere other than aboard the USS Atlanta during its overhaul at PSNS. Indeed, no such evidentiary basis exists in this case, as there is no testimonial or other evidence in this record showing that Mr. LeFevre ever worked with or around OI Kaylo aboard the USS Cunningham or USS Rodman. Ratemran's opinions to the contrary, then, would be nothing more than unsubstantiated *ipse dixit* and would be precisely the type of speculative testimony properly excluded under *Daubert* and its progeny. *Joiner*, 522 U.S. at 146.

### 7. Exclude Evidence of OI's Conduct After Plaintiffs' Alleged Exposure To OI's Product.

OI moves for an order precluding any reference to remedial actions taken by OI that post-date Plaintiffs' alleged exposure to OI's products. Such evidence is irrelevant and prejudicial. Pursuant to Federal Rule of Evidence 407, evidence of subsequent measures taken that would have made an earlier injury or harm less likely is not admissible to prove negligence, culpability, or a defect. Federal Rule of Evidence 407 excludes corrective measures offered as admissions. *In re Mentor Corp. Obtape Transobturator*, 2010 WL 2015146, at *1 (M.D.Ga. 2010); *In re Joint Eastern District and Southern District Asbestos Litigation v. Armstrong World Industries, Inc.*, 995 F.2d 343, 345-346 (2d Cir. 1993). The admission of this evidence would improperly incline jurors to punish OI for conduct that in no way contributed to Plaintiffs' alleged asbestos exposure.

### 8. Bar Argument Of Counsel Characterizing The Standard Of Proof In Terms Other Than Those Of The Applicable Jury Instruction.

OI moves for an order precluding Plaintiffs' counsel from arguing the meaning of, or otherwise characterizing the jury instructions regarding the preponderance-of-the-evidence standard or Plaintiffs' burden of proof. Such characterizations are misleading to the jury and should be prohibited. It is the prerogative of the Court – not the lawyers – to instruct the jury on the law. The Washington Pattern Jury Instructions define the applicable burden of proof in civil

cases as follows:

> When it is said that a party has the burden of proof on any proposition, or that any proposition must be proved by a preponderance of the evidence, or the expression "if you    find" is used, it means that you must be persuaded, considering all the evidence in the case [bearing on the question], that the proposition on which that party has the burden of proof    is more probably true than not true.

WPI 21.01 (5th Ed.).[5] This jury instruction sets forth the terms in which the preponderance-of-the-evidence standard should be stated to the jury. OI anticipates that Plaintiffs' counsel will attempt to characterize this standard in terms calculated to minimize Plaintiffs' burden of proof. For instance, Plaintiffs' counsel may argue that Plaintiffs must prove their case by "fifty-one percent," "50.1 percent," or "any bit greater than fifty percent." Alternatively, Plaintiffs' counsel may define preponderance as "a mere tipping of the scales" to one side or the other. These characterizations are misleading to the jury, and should therefore be precluded under Federal Rule of Evidence 403. It is improper for Plaintiffs' counsel to portray the burden of proof as meaning anything other than what the jury instructions state. For the foregoing reasons, OI respectfully requests that the Court prohibit Plaintiffs' counsel from characterizing the preponderance-of-the-evidence standard in terms other than those of the applicable jury instructions.

**9.**   **Exclude Articles And Advertisements Not Seen Or Relied Upon By Plaintiffs.**

OI moves pursuant to Federal Rules of Evidence 401, 402, and 403, and the United States Supreme Court's decision in *Phillip Morris USA v. Williams*, 549 U.S. 346 (2007) for an order excluding from evidence: (1) a 1952 advertisement which describes OI's Kaylo insulation as "non-toxic"; (2) an article by E.C. Shuman published in the June 1952 issue of Petroleum Engineer magazine, which also describes Kaylo as "non-toxic"; and (3) any argument of counsel or witnesses that OI mischaracterized or falsely advertised its product as "non-toxic" (collectively

---

[5] *In re Asbestos Cases*, 847 F.2d 523, 524 (9th Cir. 1988) ("state law controls the substance of jury instructions in diversity cases."); *Miller Republic Nat. Life Ins. Co.*, 789 F.2d 1336, 1338-39 (9th Cir. 1986). The question of whether an incorrect instruction is prejudicially erroneous is governed by federal law. *E.g.*, *Pollock v. Koehring Co.*, 540 F.2d 425, 426 (9th Cir. 1976).

Schiff Hardin LLP
Attorneys At Law
San Francisco

referred to herein as the "Toxic/Non-Toxic Evidence").

The Toxic/Non-Toxic Evidence should be excluded for at least three distinct reasons. First, it is not relevant to any issue in this case. There will be no evidence that Plaintiffs ever saw, read, or relied on the advertisement or the article, and they are not relevant to any claim pleaded against OI. Absent any connection between Plaintiffs and the statements made in the advertisement and article, the proffered evidence has no relevance. *See* Fed. R. Evid. 401 (defining "relevant evidence" as having "any tendency to make a fact more or less probable than it would be without the evidence"); *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 953 (9th Cir. 2011).

Second, given that there is no evidence that Plaintiffs read or relied upon the advertisement or article, the evidence could only be used to prove OI's purported conduct toward non-parties, which is both irrelevant and constitutionally impermissible. *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (reasoning "relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case"). Punitive damages are not available in this case under Washington law, but, even if punitive damages were available, the Supreme Court has held that any award of punitive damages must be based on interactions between the defendant and the plaintiff, not on a defendant's purported conduct toward nonparties. *Philip Morris,* 549 U.S. at 352-53.

Third, under Federal Rule of Evidence 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Even if this evidence were relevant, it should be excluded on these bases. *Alexander Staniewicz v. Beecham, Inc.* 687 F.2d 526, 529-31 (1st Cir. 1982). There will be abundant evidence that the characterization of an asbestos-containing product as being "non-toxic" in the 1950s was neither false nor misleading, as asbestos was not defined as "toxic" at that time. The admission of this evidence would result in a mini-trial about how the

word "toxic" was defined and used more than half a century ago. As a result, these publications, their proffer, and the resulting cross-examination and rebuttal testimony will be unduly prejudicial, confusing, and time-consuming. *Marsee*, 866 F.2d at 321-22.

Even if the Court were to rule that portions of the advertisement or the article are somehow relevant, undue prejudice would result from the way the jury would view OI's characterization of Kaylo as "non-toxic." What is relevant here is whether asbestos was considered "toxic" in the 1950s, not whether it is considered "toxic" today.

Because the advertisement and the article are not relevant, and because their admission would unduly prejudice OI, and unnecessarily lengthen and complicate the trial, as well as confuse the jury, OI respectfully requests the Court to rule that the 1952 Kaylo advertisement and the Shuman article in Petroleum Engineer are not admissible either in whole or in part, and should not be read, discussed, or otherwise brought to the jury's attention during trial of this case.

### 10.   Exclude Evidence Of Knowledge Of Trade Organizations Of Which OI Was Never A Member.

OI anticipates that Plaintiffs will seek to introduce into evidence certain documents relating to trade organizations. OI moves for an order precluding the Plaintiffs' use against OI of any evidence of the activities or information available or known to certain trade organizations of which OI was not a member. One issue in this case is whether OI knew or should have known at the time its asbestos-containing products were being sold and distributed that exposure to these products could pose a risk of injury. The standard of relevancy under Federal Rule of Evidence 401 is clear: evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004) (rejecting plaintiff's argument that evidence concerning industry groups is relevant on the grounds of common knowledge, consumer expectations or failure to warn, and upholding district court's decision to exclude evidence concerning tobacco industry groups).

Knowledge possessed by trade organizations, and available only to that trade organization's members, is irrelevant to what OI knew at any given time. No logical analysis can arrive at the conclusion that OI could obtain information from a trade organization of which it was not a member. Absent proof that OI had actual knowledge of the minutes or other records of trade organizations, this evidence cannot be admitted for notice or any other relevant purpose in this action, and OI therefore respectfully requests that the Court enter an order barring its use against OI.

### 11.   Preclude Argument That The Knowledge Or Conduct Of Other Corporations Or Entities Is Imputable To OI.

OI moves for an order precluding Plaintiffs from arguing or eliciting testimony to the effect that the knowledge or conduct of other corporations or entities (e.g., asbestos product manufacturers such as Johns Manville or Raybestos-Manhattan) is imputable to OI.

OI anticipates that Plaintiffs will argue that the knowledge possessed by certain other companies or entities regarding the potential health effects of asbestos should be imputed to OI, in order to convince the jury that OI knew or should have known at the time its asbestos-containing products were being sold and distributed that exposure to these products could pose a risk of injury. However, the conduct of, and knowledge possessed by other corporations and entities is irrelevant to what OI knew at any given time, and is therefore inadmissible. Fed. R. Evid. 401, 402; *Tompkin*, 362 F.3d at 898-99 (excluding evidence concerning non-party tobacco companies and rejecting Plaintiff's argument that such evidence was relevant to show that other companies knew or should have known of the dangers of smoking). Without evidence that the information in question was provided to OI during the relevant time period, Plaintiffs cannot show that OI knew of (or should have known of) information possessed by the other corporations or entities. Such argument is therefore irrelevant, because it has no bearing on what OI knew or did not know. The argument would also unduly prejudice OI, because there is no evidence that it actually possessed (or had access to) the information purportedly known by other corporations or

entities. This argument will also cause undue consumption of time, because OI will be induced to introduce evidence to rebut it. Therefore, OI respectfully requests that this Court enter an order precluding Plaintiffs' counsel and their witnesses from making any argument imputing the knowledge of other corporations or entities to OI, unless Plaintiffs first introduce admissible evidence showing that the information in question was provided to OI during the relevant time period. *United States v. Curtin*, 489 F.3d at 943.

### 12.    Bar Evidence Or References To Pleadings Or Arguments Of Counsel From Any Other Litigation.

OI moves for an order barring any evidence or references to pleadings or arguments of counsel from any litigation other than the instant case. *Yellow Bayou Plantation, Inc. v. Shell Chemical,. Inc.*, 491 F.2d 1239, 1243 (5th Cir. 1974) (court excluded list of lawsuits against defendant on the grounds that such evidence has faint probative value and high potential for unfair prejudice). OI anticipates that Plaintiffs may seek to introduce into evidence pleadings or briefs of parties that were submitted in litigation other than the instant case. Any such pleadings or arguments of counsel are irrelevant to the trial of this case, do not constitute admissible evidence, and would serve only to confuse the jury. *Id.* Therefore, Plaintiffs should be barred from attempting to introduce or referring to any pleadings or arguments of counsel from any other litigation during the trial of this case.

### 13.    Bar References to Destruction of Documents or Other Evidence.

OI moves for an order prohibiting Plaintiffs, or any other party, from stating or suggesting that OI destroyed documents relating to its Kaylo division, the use of asbestos, the health effects of exposure to asbestos, or asbestos generally.

Between 1948 and 1958, OI sold, in commercial quantities, an asbestos-containing insulation product called Kaylo. As of the close of business on April 30, 1958, OI sold its Kaylo division to Owens Corning Fiberglas Corp. As part of the contract by which the Kaylo division was sold, OI agreed to "deliver to OCF all books, records, contracts, orders and files of the Kaylo

division, except such as OI desires to retain, and as to these, OI will make and deliver to OCF copies of any OCF desires."

According to the deposition testimony of OI's late industrial hygienist, Willis Hazard, the documents in Hazard's possession were transferred to Owens Corning Fiberglas Corp. in conjunction with the sale of the Kaylo division. While some records regarding the operation of the Kaylo division have been found in the business records of OI, other documents, including the documents relating to the test on Kaylo done by the Saranac Laboratory, were not found in these records. Despite the fact that certain documents have not been found in the business records of OI, there is no evidence that OI destroyed any documents relating to Kaylo or the use of asbestos or OI knowledge about the health aspects of asbestos.

If Plaintiffs are permitted to suggest to the jury that documents were destroyed, the jury would be unfairly led to believe that OI engaged in wrongdoing. Further, plaintiffs have not demonstrated that the documents were relevant or that any alleged destruction was intentional. *Henning v. Union Pacific R. Co.*, 530 F.3d 1206, 1219 (10th Cir. 2008).  OI respectfully requests that this Court order Plaintiffs and all other parties to refrain from suggesting, stating or implying before the jury that OI destroyed documents.

### 14.   Exclude Wayne Langdon, Maurice Lane, Henry Anderson, Ronald Cox and Ralph David.

OI moves for an order precluding Plaintiffs from offering any testimony from Wayne Langdon, Maurice Lane, Henry Anderson, Ronald Cox and Ralph David, upon whom Plaintiffs have relied to support their allegations of exposure against Owens-Illinois. Plaintiffs have disclosed several witnesses in this case to offer testimony relevant to the claims asserted by and on behalf of Mr. LeFevre and Mr. Olson. (Dkt. 244 at 2; Dkt. 210 at 2-3; Dkt. 143; Dkt. 89 at 2-3). None of these five individuals, however, was disclosed by Plaintiffs as witnesses in this case. (*Id.*). Accordingly, Plaintiffs should be barred from introducing or relying upon the testimony of these individuals for Plaintiffs' failure to timely disclose them as witnesses in this case. Fed. R.

1    Civ. P. 26; *Adler v. Comm'n Workers of Am., Local 7803*, 144 Fed. Appx. 592, * 1 (9th Cir. Jul.

2    20, 2005) (affirming exclusion of lay witness testimony of failure to disclose pursuant to R. 26).

3         This Court should also exclude the testimony of these witnesses in the *LeFevre* case

4    because their testimony is irrelevant to the issues the jury will be asked to decide in that case. As

5    conceded by Plaintiffs, the substantive law applicable to the *LeFevre* case is federal maritime law.

6    As the Sixth Circuit held in *Lindstrom*, applying maritime law, "a mere showing that defendant's

7    product was present somewhere at plaintiff's place of work is insufficient" <u>as a matter of law</u> to

8    establish substantial factor causation in an asbestos case. *Lindstrom v. A-C Prod. Liab. Trust*, 424

9    F.3d 488 (6th Cir. 2005). Yet Mr. David and Mr. Anderson would, at most, merely place OI

10   Kaylo somewhere within the several-hundred acre PSNS at some point in time.[6] (*See* Dkt. 256 at

11   5). Because such testimony is insufficient as a matter of law for Plaintiffs to meet their burden of

12   establishing substantial factor causation under the applicable substantive law, allowing that

13   testimony at trial would be irrelevant and would only serve to confuse the jury. It should therefore

14   be excluded for this additional reason as well.

15        **15.    Joinder to General Electric Company's and CBS Corporation's Motion in
                    Limine Number 6.**

16        OI hereby joins and adopts Motion *in Limine* Number 6 filed by General Electric and CBS

17   Corporation on December 9, 2013 as though that motion were fully set forth herein.  (*See* Dkt.

18   321 at 12-14).

19

20

21

22

23

24

25

26  ───────────────
[6] Mr. Cox, Mr. Langdon and Mr. Lane all post-date Mr. LeFevre's work at PSNS and were not relied upon by Plaintiffs in response to Owens-Illinois's MSJ in the *LeFevre* case. (*See* Dkt. 256 at 5).

1

2    DATED:        December 9, 2013

3                                                 /s/ Stephen M. Copenhaver
                                                  Stephen M. Copenhaver, admitted *pro hac vice*
4                                                 SCHIFF HARDIN LLP
                                                  1 Market Street, Spear Tower, 32nd Floor
5                                                 San Francisco, CA 94105

6                                                 CO-COUNSEL
                                                  Steve Fogg
7                                                 CORR CRONIN MICHELSON
                                                  BAUMGARDNER & PREECE
8                                                 1001 Fourth Avenue, Suite 3900
                                                  Seattle, WA 98154
9                                                 (206) 625-8600

10                                                Attorneys for Defendant
                                                  Owens-Illinois, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

## **CERTIFICATION**

2

3       Pursuant to this Court's local Civil Rule 7(d)(4), the undersigned has conferred in good

4 faith, by telephone with Plaintiffs' counsel and defense counsel, in an effort to resolve whether

5 the matters discussed herein are in dispute. Having determined that there is some dispute, Owens-

6 Illinois asks the Court to grant the foregoing motions *in limine*.

7

8 December 9, 2013          /s/ Meghan R. McMeel

9                           SCHIFF HARDIN LLP
                            1 Market Street, Spear Tower, 32nd Floor
10                          San Francisco, CA 94105

11                          ATTORNEYS FOR DEFENDANT OWENS-ILLINOIS, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 9, 2013, he filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing upon all other parties who have appeared.

/s/ Stephen M. Copenhaver

21912-0030
SF\320877375.5

Schiff Hardin LLP
Attorneys At Law
San Francisco

OWENS-ILLINOIS, INC.'S MOTIONS IN LIMINE NOS. 1 THROUGH 15